May it please the Court, Counsel, the importance of accurate legal advice for non-citizens accused of crimes has never been more important. As a matter of federal law, deportation is an integral part, indeed sometimes the most important part, of the penalty that may be imposed on non-citizen defendants who plead guilty to specified crimes. That is a direct quote from the Padilla case decided almost exactly nine years ago. There was concerns then about the floodgate of litigation being open for post-conviction remedies. That clearly has not happened. In order for the, and the issue before the Court, the single issue before the Court today is whether the Defendant's Trial Counsel failed to advise him that a And in order to prevail, Mr. Dat must show two prongs, the performance prong and the prejudice prong under the Strickland opinion. Before you get any further, is that the issue or are you asking for an evidentiary hearing? We would be delighted with an evidentiary hearing, Your Honor. But you think that the record is sufficient for our resolution? I think it would be possible for you to vacate the conviction, but I would still think the other alternative remedy, and there are disputes about what evidence was available and what the decision was rational or not based upon the amount of evidence against him, and that may require an evidentiary hearing. There is a case out of 2014, 2015 case, Rodriguez-Vega case out of the Ninth Circuit, where the Court decides it is a matter of law. After permitting the District Court to expand the record with an affidavit from counsel, where counsel, defense counsel, trial counsel in that case concedes that all he said was there is a high probability rather than you will be deported. In that case, the Circuit Court vacated the conviction. In this case, the appropriate, while we'd love to have that happen, the appropriate remedy may be simply an evidentiary hearing. Let me direct you to a couple of our cases. First of all, there's the 2012 case of Abraham. Right. Okay. What does it tell us or not tell us? How good is it? How bad is it? Well, I'm not saying it's bad. Well, no, I mean it's effect. It's authoritative effect is what I'm referring to by saying bad. I think the big difference both in the Abrahams case and the Ramirez-Jimenez case I was going to ask about that next. Thank you. I figured that might happen. But since it was decided just last November, the big issue there is, the big distinguishing factor is this defendant was falsely informed. He was erroneously or falsely informed. You will not be deported. Very distinguishable facts then from both of the Eighth Circuit cases. The Well, now in Abraham it says, Abraham doesn't dispute he read the PSR but argues attorney was ineffective for failing to advertise him. So you said there's a difference whether you fail to say anything or you say something a little wrong. Absolutely, Your Honor. Okay. And I think that there's a Second Circuit case quoting a judge out of Florida, the Northern District of Florida, former Chief Judge Robert Hinkle. I thought his analogy was excellent. It says every time you get on airplanes, such as I did yesterday, you're told there's a chance you're going to go down. Well, here's the emergency row. Watch out in case the airbags inflate. Nobody gets off the plane. That's very different, though, from the pilot coming back and saying this plane is going down. We're going to crash. You're going to get off the plane, at least if you're Judge Hinkle, you're getting off the plane. And in this case, the analogy is Mr. Datt was entitled to rely upon his pilot, the person who's going to get him safely through the court system, his attorney. And instead of saying, if you happen, she was, he was erroneously assured you will not be deported. The first prong then of the test before the court, the performance prong was established by Padilla to set the floor for adequate performance by trial counsel. And that case said you must advise of potential consequences. You don't have to be specific. You can simply say there are potential consequences unless the deportation is absolutely clear. And in that case, you have to be absolutely clear when you talk to your client. In this case, it was fairly straightforward. He's Mr. Datt was convicted from behavior dating back. And again, he maintains his innocence back in July 16 of 2014. He's convicted of a violation of 18 section USC, section 1951, which amounts to essentially strong arm robberies, what it used to be called. Now it's interference with interstate commerce by violent means. He's convicted of that, and that's clearly an aggravated felony. And aggravated felonies are listed as you will be deported. If you're, even though he maintained and always has maintained his legal permanent residency status, he's still told you will be deported, which is another distinction, if I might, with the case you decided two months ago, the Jimenez case. And that, in that, that defendant was already in ICE custody. He'd already had problems with ICE. He knew he was having problems. And all that happened before the guilty plea. In this case, none of that was presented in Mr. Datt's case. So the two earlier plea agreements are not in the record anywhere before us, right? Well, they're by, in his affidavit, alleging those is in front of you. Yeah, yeah. But the actual words of the rejected two earlier plea agreements are not before us, right? You're correct, John. Their conclusions, though, is unrebutted, unrefuted, uncountable. And that is he was presented two separate plea agreements, both contained deportation language. And both times, I'm not signing that. And he then got a third opportunity, and he did accept that plea agreement. And that plea agreement, though, speaks in terms of a mere possibility, not unlike the flight attendant saying, in the event we go down, watch out for the exit rows. You said it's unrefuted. And I guess that is one of the issues, the questions I had in my mind. It's kind of like something we deal with fairly routinely, which is a judge tells the defendant he's got 14 days, or she's got 14 days to appeal. The defendant comes to us and say, I told my attorney, I want to file an appeal. No appeal was filed. It's my attorney's fault. And then we have to have a hearing where you find out, well, did they or didn't they? But there's nothing in the record, as far as I know, other than his affidavit. There's nothing, as I can find it, about the two prior agreements. There's nothing about an affidavit or anything from the attorney. Yes, this is the advice. No, this isn't the advice. And also, there's something in the record about he has separate immigration counsel. But I don't know anything about that either. Which may all say we need a hearing. But is there anything in the record other than his affidavit to either corroborate or refute anything he says? No, Your Honor. We did file an application to expand the record with affidavits. And that didn't happen. So that probably all the more reason to suggest that the appropriate remedy is an evidentiary hearing. Well, you know that the district court, of course, makes short work of this, although she cites about four or five documents. You know the paragraph that the district court writes. Why isn't that enough, though? Because Judge Smithcamp, doing her job completely as she should be, gives him due process warnings and says, before you enter this plea, I want to make sure that you're capable and confident and that your plea is knowingly, intelligently, and voluntarily made. So I'm going to tell you there's a possibility. It's not the same. And that doesn't deprive this defendant of his Sixth Amendment right to effective representation of counsel. Well, it does say, and he affirms, if you are not a U.S. citizen, your guilty plea will result in your permanent removal from the United States. And he marks yes. And then before her, you know, she has this form. You're aware of it. Yeah. Rule 11 form. Correct. And then before her, he goes over it with her. That's, I understand, Your Honor, and I still think that's... So explain that away. That calls out for an evidentiary hearing. It's difficult to explain away, except that it's at the time of the, he enters a plea, and I would still submit that that cries out for an evidentiary hearing. I see that I'm in to my role. Yes, sir. And you may preserve. You may, of course. Ms. Smith. Good morning, Your Honors, counsel. May it please the court. My name is Tessie Smith, and I represent the appellee in this matter, the United States. To begin with, Your Honors, I would like to make a small distinction. I believe the way that Padilla or the standard of Padilla has been referred to by opposing counsel is a little confused. Padilla requires that counsel advise his or her client that an offense makes him or her deportable or could potentially face immigration consequences. As this court properly held in Yemenez, what Padilla does not require is that counsel provide advice saying, oh, based on this conviction, you will certainly be deported because that gets into the realm of the immigration proceedings, which are difficult to predict. But this is the reverse case. So he's saying not that my counsel was wishy-washy, I may be not be deported if I plead guilty. So is there any case that deals with that situation? Yes, Your Honor. There is a case out of the Third Circuit. Its name is United States v. Fazio. In that case, defense counsel advised the client that there was a possibility of deportation, but it was his opinion that he would not be deported. Defense counsel cited to the fact that he was a legal permanent resident, that he had many ties to the community and had been around for a long time. Well, at the change of plea hearing, the judge, well, backing up a little bit, the plea agreement contained language stating that the defendant may face immigration consequences. See, that's one of the problems, other than what Judge Benson just read. I've read the plea agreement. I've read the pre-sentence report. And in all these documents, it's kind of wishy-washy It says there are collateral consequences that may include immigration consequences. So I'm a criminal defendant. I said, well, it says that there may be consequences. The pre-sentence report says I may be deported. Mr. Defense counsel, what's going to happen? Oh, don't worry about that. You're not going to be deported. You've been here so long. You don't have to worry about that if you plead guilty. So what happens in that situation? So, well, specifically in this case, it's a little, I wouldn't say wishy-washy, but it's inconsistent. There are points in the record where it says may face immigration consequences. And then there are other points in the record, such as the petition that says your guilty plea, excuse me one second. If you are not a United States citizen, in most federal felony cases, your guilty plea will result in your permanent removal from the United States. But that's it. So the attorney said, you go to your attorney and he says, well, what's that mean? Well, I mean, it means in most cases, but you're the exception. You're not going to be deported because you came here as a baby and you lived here for 30 years. Well, your Honor, if we do believe that argument, I would then turn to what happens after the change of plea hearing when the PSR is provided to counsel. The PSR explicitly stated as a result of the incident conviction, the defendant will be subject to administrative removal from the United States and immigration proceedings will be commenced upon the defendant's release from custody. It couldn't be more clear than that. And at the sentencing hearing with Mr. Dat sitting next to her, counsel confirmed that she had reviewed this with him, that they accepted it didn't have any objection. While the opposition states that Abraham cannot be applied in this case because the plea contained a waiver of his ability to withdraw the plea agreement, the government disagrees because Judge Smithcamp had not yet accepted the plea agreement. So if counsel had reviewed, which we believe counsel did review this as stated on the record at the sentencing hearing, had reviewed this explicit language in the pretrial services report with Mr. Dat and still didn't object to it, I'm sorry, I lost my train of thought a little bit. Well, I'll follow up there with that. Maybe I just read it a little bit differently. I know you're saying it will be removed and will go through an immigration proceedings. And my understanding is that he had an immigration lawyer, at least on the record there was discussion of him having an immigration lawyer. So to me, in combination, that paragraph plus the, oh, put him, please place him in a location where he can be near his immigration counsel. One reading of that is, all right, I've got my immigration proceedings now. I'm going to go. I've got my lawyer and I'm going to take care of this. Like my defense lawyer told me I could, and I'm going to get to stay. So it seems like there's another way of reading that paragraph in conjunction with whatever, with what else is happening. I would agree, Your Honor. But regardless of the advice of counsel under the performance prong, I believe that both of those things definitively show that he cannot prove prejudice because he was aware or he, to use language from the Yemenis opinion, he surely knew he was facing removal proceedings. And once again, the standard under Padilla isn't that counsel advised that the defendant will or will not be removed. So what's the case that we've talked about before, the Supreme Court's Lee case? I bet you're familiar with the Lee case. Are you Lee versus United States, June 2017, Chief Justice Roberts? If you're not, just tell me. I am not. Okay, great. We'll ask the other counsel. But there, there was an evidentiary hearing and it's the same kind of situation. Okay. Go ahead. Proceed. Okay. Back to the point I was trying to make about the PSR and why Abraham still applies. At that point in time, when Judge Smith-Camp asked whether or not the PSR had been reviewed with Mr. Dat and whether or not they accepted it, there was still the opportunity for the appellant to state, no, we object to the PSR based on the removal language contained within it. And based on that objection, Judge Smith-Camp could have not accepted the plea agreement and the appellant would have been able to withdraw his plea agreement. So for that reason, Abraham does apply in this case. So to review the documents in this case, all of which contain language showing that the consequences. In the petition, it stated, your guilty plea will be considered by immigration officials in determining whether you are deported. It also stated, as I previously iterated, in most felony cases, if you are not a U.S. citizen, your guilty plea will result in your permanent removal from the United States. At the end of the petition, Mr. Dat affirmed that he went over the petition with counsel and that all the answers were true and correct. In the plea agreement, Mr. Dat acknowledged that there may be collateral consequences to any conviction to include, but not limited to, immigration. During the plea colloquy, Judge Smith-Camp explicitly asked Mr. Dat, are you a United States citizen? He responded, I am not. She then stated, do you understand that your conviction in this case might affect your immigration status? Did she say might or could? She stated might. She said might, because in her findings she says could, but she's not quoting herself. Go ahead. Gotcha. And Mr. Dat stated, I'm aware of that. He also affirmed to her that he had discussed this matter with his counsel. Um, and just quickly addressing Mr. Dat's allegations in this case, his allegations that he was misadvised, his allegations of the, um, two prior plea agreements, which, um, mentioning the plea agreements, there's no evidence in the record, nor, um, could the government find any evidence of two prior plea agreements. And the wording as stated in the plea agreement that he accepted was the standard language used by our office at that time. Is that what you've just or just by way of? This is just by way of explanation. Um, so regarding the, the misadvice or his allegations of misadvice, those statements are just that, they're allegations. And the record conclusively shows that those allegations cannot be believed because they're contradicted by the record, by the petition, by the plea agreement, by the plea colloquy and his affirmations to Judge Smithcamp that he had been advised by the PSR. What, what if, what, what if, let's assume that Mr. Dat says I was affirmatively misadvised. I was told that I would not be deported and I would not have pled guilty had I received correct advice. Let's assume the attorney corroborates that. Attorney just comes in, falls on his sword and says, yeah, or her, I guess it's her and says, yeah, I, I, I made a big mistake and I didn't think you would be deported. And I told him he wouldn't be deported. And he told me I won't plead guilty if, if, if I'm going to be deported. Would that make a difference? It wouldn't make a difference, Your Honor. And that is because he has to prove both prongs of Strickland and he cannot prove the Strickland prejudice prong as shown by the PSR and his actions at sentencing where he showed he was aware he was facing immigration consequences. But facing immigration consequences is different than knowing you're going to be deported. And it's different than having your attorney tell you, you won't be. Sure, you got immigration consequences, but what are those? Well, don't worry about it. You've been here 30 years. That's for the, that's for the person who just snuck across the border last year. Well, Your Honor, at this point, we still don't even know if it is certain that Mr. Datt will be deported. We know from his, his allegations that he hasn't been able to renew his legal permanent resident card, if that's true, but he has not been subject to immigration proceedings at this time. So we don't even know if he will be deported in this matter, especially considering the fact that he is from Sudan, and it's unclear whether or not we are deporting to that country. So under Abraham, he cannot prove the prejudice prong. Your Honors, unless there are any other questions, I would submit the matter and request that you deny Mr. Datt's 2255 motion without an evidentiary hearing. Thank you. Thank you. Back to you, Mr. White. With all due respect, I still haven't heard anything that says he was, that contradicts his allegation, uncontroverted, that he was told, erroneously or falsely, you will not be deported. You don't have to worry about it. You've had your LPR status long enough. You're not going to be deported. It's precisely what Judge Malloy described. Are you familiar with the Lee case, the Supreme Court case? Not as well as I should be, Your Honor. No, that's okay. We'll pass it by. The point though, Your Honor, is the comment about we don't know if he's going to be deported or not. He may suffer the ultimate prejudice because also what's in his affidavit is he would never have agreed to a plea that involved deportation, in part because of his family situation. His father's elderly. He's had a stroke. He's wheelchair-bound. He was living in his parents' home at the time of his arrest. His mother is his primary, almost sole, support for the family. She works in a factory in Omaha. But his subjective belief, again, uncontroverted, unchallenged, and somewhat corroborated today, is that if he goes back to Sudan, and that's the region of the world he's from, he's technically a man without a country, because of his tribal affiliations, he's absolutely convinced, and that's in his affidavit, that he will be murdered and, I think his phrase is, chopped into small pieces. So that is prejudice, and that is something that is clearly established in the record. So waiting to see if he's going to be deported or not is simply not an adequate remedy, at least in evidentiary hearing, to decide whether or not trial counsel may fall on their sword. In which case, you asked earlier, Honor, about two best cases. There are two best cases. They're both cited in the brief. One out of the Second Circuit, one out of the Ninth. But they both, those are the cases that involve false statements or erroneous advice. In the Kovacs case, there was an Australian citizen convicted of misprison of a felony. His counsel moves to seal the record. The trial judge says, no, I'm not going to do that. And he moves to seal it because of the immigration consequences. And he's advised, no, I'm not going to do that. His trial counsel says, well, that's all right. We're convinced that this misprison of a felony case or conviction is not a deportable offense, false or erroneous conviction. And in that case, the Second Circuit set aside the conviction, granted a writ of coram nobis. The Ninth Circuit, in a very similar case, involving a 22-year-old defendant, same age as Mr. Dat, who rejected a plea agreement. And that statement is in her affidavit, only that. And in her affidavit, she rejects the plea agreement. She then gets a separate plea agreement. She accepts it, pleads guilty to it. And at her sentencing, her trial counsel says, there is a high probability of deportation. And the court reasoned that the false or erroneous decision, erroneous advice, does not overcome the defendant's absolute right to Sixth Amendment effective assistance of counsel. And if counsel takes it upon themselves under the Padilla case to say, you won't be deported, you don't have to worry about it. And that is his allegation, his sworn testimony in his affidavit. In that case, then, he's entitled to rely upon that advice. And entering into a plea agreement that says you might be deported is not the same as saying you will be deported. And your pilot coming back to say, this plane will crash if you want to get off. If you don't want to get on the plea agreement, now's the time to get off. The other problem with the PSR, technically it's not in the record, it's not found in either appendix, and it- What, the PSR? The PSR. But it comes in long after the guilty plea has already been accepted. It's- We get the PSR. I understand. But it's at the time of sentencing. It's not at the time he enters into the plea. So my point there is, it's similar to what the court in, it's the Vega case, emphasized that the counsel statement at sentencing is too late. It's after the plea has already been accepted by the defendant. And for the- And it also flies in the face of the consequences that the defendant in that case faced, the same as this defendant, the language being is deportable, which is what this same language is in Padilla. So unless there's anything further, I would respect the request that the case, at a minimum, be remanded to give this man an evidentiary hearing, an opportunity, at least, to avoid what he believes is a certain death. If he is deported. Thank you for your time. Thank you, counsel, for your arguments. Case number 17-3652 is submitted for decision by this court.